May it please the court, good afternoon and also to my to my friend Mr. Bice. The chilling effect upon the exercise of first amendment rights may derive from the fact of the prosecution unaffected by the prospects of its success or failure. That is the U.S. Supreme Court in Dombrowski v. Feister in 1965 and that is the principle that the Nevada legislature chose like California before it to insure against in cases like this by passing a strong anti-slap law. This case is a classic slap suit the kind that the legislature had in mind when it passed the when it passed this law. In fact quite in mind because in 2015 Mr. Wynn actually himself worked to attempt to essentially repeal the law. So the decision below must be reversed and this suit dismissed. Even in the absence of an anti-slap statute summary judgment for the defendant is a favored remedy in defamation cases such as this one. Now in this one though if we look at the context of an anti-slap motion in manufactured home communities incorporated versus the county of San Diego in this circuit 655 F 3rd 1171 it said the court should grant the motion if as a matter of law the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. Looking at the evidence in the light most favorable to the non-moving party yes. Yes your honor since this is the defendant's motion. However I think that the court below really misunderstood the case. It's looking at it as if we are trying to prove a sexual harassment case which is not what we're trying to do. We merely must refute the fact that Ms. Bloom harbored serious doubt as to the falsity of her statements and she did not. And where her state of mind as in this case where a particular state of mind is an element of a claim it must be plausibly supported by factual allegations as said by the Supreme Court in Ashcroft versus Iqbal. And as also recognized. Is it really entirely dependent upon her state of mind? Couldn't somebody look and say the statement she made was reckless because she didn't have evidence or reason to believe it should be that it was truthful. Now she may have believed it was truthful but I don't know that she's the ultimate judge of that issue. Well Judge Clifton you're correct. It is either knowing falsity or a reckless disregard. But St. Amant versus Thompson shows us that that reckless disregard you must still enter the mind of the speaker and say does this speaker harbor serious doubts as to veracity of the publication. And I don't think that we're there on this record. Well recklessness is not an entirely subjective standard right. It has an objective component at least at the summary judgment stage. Not in cases like this your honor. I think if we go by what St. Amant says which is what controls this. Now of course recklessness still goes to her state of mind. Now I could see if we had some overwhelming evidence. Every single piece of evidence said that what happened didn't happen. That we had nothing but witnesses saying that Ms. Mullins in making her statements lied to Ms. Bloom. But we're not there. So we have for example Ms. Mullins's deposition testimony. I made it very clear to them that I with my own ears had never heard Steve Wynn to say to anyone in management I want the girls to be in bras and revealing clothing. I never heard him making the demands. So I can only assume that all of these demands essentially came from him. Now when she says I made it very clear to them she's including Ms. Bloom right? She is your honor. But she's also... And why isn't that enough? The jury may not believe your client acted recklessly but why isn't that enough to establish a disputed issue of material fact as to recklessness? I think it would be enough if we were trying to prove that this was a sexual harassment case. I don't think that rises to recklessness. In cases like this the context really matters. Remember in our briefing we articulated this that there was a long history and a very public history of Mr. Wynn's shall we call it sexual misconduct. Including some claims that were corroborated proven and enough to get him not just thrown out of being president of Wynn Resorts. But he had to divest from them completely. But counsel the first press release the initial press release talked about his demands in at least two different places. And the his demands are Mr. Wynn right? They are. One place Mr. Wynn's demands another place his demands. So they're saying that he this press release reasonably read is that Mr. Wynn is making these demands and Ms. Mullins is saying I made it clear I never heard him make these demands. Correct but you don't need to go ahead. Do we need to hear the general's command in order to know it came from the general's office? The adjutant could get could communicate the order. The lieutenant can communicate the order. Whether they were his demands from his voice, his demands from his power structure, his demands from a environment here that was completely you know it seemed you know it's funny they talk in page six of their brief of the fact that none of this really came from Mr. Wynn. This was all simply because the organization liked to do things in what they their words an old school manner. You know and one might picture the series Mad Men but this is it doesn't have to come from his voice and even then is that really the line upon which we are going to draw a defamation complaint? Are we going to look at it and say well whether the words came from Mr. Wynn's mouth to dress scantily or whether the words came from somebody else's mouth to dress scantily was this reckless or was it Ms. Bloom hearing Ms. Mullen's story then hearing corroboration from another witness then also examining really uh you know two years worth of reporting about this. I'm sorry was there testimony from somebody that I told Ms. Bloom that I heard Wynn say these things? There is no testimony saying that but your honor I I'm afraid that if you're focusing on that you're not focusing on the right fact. The right fact. Your argument actually is confusing me today because I thought that uh that you'd agree that the gist of the press release is that Mr. Wynn himself was responsible for giving the direction and was personally involved in the retaliation. So I think that's why the questioning really focused on well what information is there out there beyond just speculation that he uh directed was responsible for directing your analogies that well you don't have to know that the general gave the order for the troops to march sure but in this particular case I don't see anything beyond kind of admitted speculation uh that Mr. Wynn personally gave the instruction or was involved in the retaliation. Well I can help with that uh Judge Wynn uh if you if you look at our record first off uh Angelina Mullins testified at ER 1349-1351 that subordinates of Wynn including his right-hand man would stop rehearsals upon learning Wynn would attend then instruct all the female cast members to strip down to more revealing clothing. So if the right-hand man comes in and says Mr. Wynn's coming quick I think it's reasonable for her to believe it came from Mr. Wynn. Now it gets transmitted to Ms. Bloom. Ms. Bloom relying upon her 30 years of relying upon Mr. Oslin who assisted in investigating the case nobody at this organization or really the head of this organization Ms. Bloom nor Mr. Oslin harbored any doubts at all that this was the case. They are allowed to be wrong. The the first amendment the actual malice standard New York Times versus Sullivan and its progeny allow you to make a mistake. The only question is is this enough to rise to the level of recklessness yet her client didn't lie to her she doesn't believe she lied to her and even now she still testified at her deposition that even today she had no doubt and Ms. Mullins testified that the statement was as if she had written it herself. That's the direct quote from her at her deposition. Well counsel in the seemed to my client that these instructions must have come from Mr. Wynn right? Correct. And in the original in the original press release it was clear that the instructions did come from Mr. Wynn. It was ambiguous at best your honor using the passive voice and in this circuit if something is ambiguous that's not enough to rise to actual malice. Many cast members including my client considered Mr. Wynn's demands humiliating. My client considered his meeting Mr. Wynn's demands unprofessional. I honestly even in the light most favorable to you I don't see those as ambiguous about who made the demands. Well your honor remember my client before running this statement sent it to Ms. Mullins the sole eyewitness the sole first-hand eyewitness sent it to her she cleared it. So it's not Ms. Bloom saying this happened she's relaying her story. Now in the corrected press release this was after Wynn's people gave a statement saying we think that these portions are false. As an accommodation to them as a as a subsequent remedial measure yes they they changed it to try to make them happy. But regardless if Ms. Mullins says Mr. let's just say hypothetically Ms. Mullins says that Mr. Wynn slapped her there's no evidence that that happened but she swears that it happened. Why should Ms. Bloom doubt him? Well I mean but but the hypothetical I would come back at you with Ms. Mullins testifies in her closed I got slapped I just assumed it was Mr. Wynn I didn't actually see him but who else could it have been but I never told her he slapped me. Well if Ms. Bloom then takes that information and infers from everything else she knows she's not simply a stenographer of Ms. Mullins's statements. We have two years worth of reports of Mr. Wynn's sexual misconduct Mr. Wynn everything seems here orchestrated for Mr. Wynn. The fact that Mr. Wynn is you know is is like Paulie and Goodfellas and never speaks directly to anybody I don't think makes my client reckless in presuming how she interpreted Ms. Mullins statement. And when she sends it to Ms. Mullins and says check this before I release it and Ms. Mullins says it's as if I wrote it myself I think that's a pretty darn good fact check for my client. If any I will be happy to continue answering questions but I see two and a half minutes left I'd like to reserve for rebuttal. All right. Thank you. Good morning members of the court Todd Weiss on behalf of plaintiff Mr. Wynn plaintiff below. The district court entered a ruling on a summary that Ms. Bloom and her firm agree that this was a motion for summary judgment under federal rules of procedure 56 and that that is the standard that applies. What we are hearing now today for the or I would argue for the first time is that contrary to what they told the district court contrary to what they actually said in their brief. Wait counsel I think I'm hearing an echo so it's kind of hard to hear that last part of your sentence maybe approaching the microphone a little more. My extreme apologies. Yeah I was having some trouble myself as well but I think when you're closer counsel I at least can I think I can hear you. I'm sorry I've used it this way before without issue apologies. That's better now if you can start over again. Thank you. What we heard from during this argument is that really the press release that is an issue in this case is somehow now not false. Even though we're now hearing essentially the argument that it really wasn't false but the issue for the court simply is the district court is the district court therefore we're starting to have the issue again. My apologies. So right like right now where you are I mean I'm sorry if this is an uncomfortable physical position but where you are right now I could hear you but where you were before I was having a lot of a lot of trouble hearing you. Yes my apologies as long as the court can hear me now. I think what somebody really helps and if you want me to pause the clock for you to get headphones that might help too. No I that would take me a little bit my apologies to the court. We're all dealing with the technology not your problem we're just dealing with it. I haven't had this issue before so but moving forward the only issue is whether or not there was evidence in the record to create a genuine issue of material fact that needs to be resolved. The issues here are disputed. In fact if you look at Ms. Bloom's brief report the principle criticism of this is that it quote ignored most of the evidence on the record. Actually that's not what the court did but that is really what her argument this is summary this was a summary judgment and so therefore the district court must accept the moving but must not accept the moving. All right now I'm sorry Judge Bennett can you hear I'm starting to do a combination of listening and lip reading. So my apologies I can I pause for one minute and go get a headset I don't understand this. I'm going to stop the clock. Thank you. Judge Nguyen I'm going to step away for that 60 seconds if that's okay. All right I will try this. My apologies I hope it is an improvement. Oh much better much better. All right thank you my apologies again to the court. So turning now back to the argument after this technical glitch as the law requires the district court here credited the disputed facts and the evidence in the light most favorable to Mr. Nguyen and drawing all reasonable inferences on that evidence in Mr. Nguyen's favor. The district court did not ignore the evidence that was proffered by Ms. Bloom. In fact that evidence was simply disputed. Ms. Bloom's argument is essentially that the court should draw the inferences that she chooses from that evidence and should ignore the reasonable inferences and and conclusions in light most favorable to Mr. Nguyen. The district court only had to ultimately resolve one issue in this motion for summary judgment because the parties essentially agreed to the other issues. They agreed that Mr. Nguyen was a public figure. They agreed that the press release was actually false and although they didn't agree the district court said that it was going to assume that for purposes of this motion the press release was a matter of public concern to fall within the first prong of Nevada statute. So the sole question before this court the sole question is are there evidence in the record from which is viewed in the light most favorable to Mr. Nguyen that there is a defamation claim against Ms. Bloom and her firm for the issuance of that press release and the answer is as the district court noted yes and I'm just going to cover some of them quickly but there are some that even the district court itself did not cite. One of them is is that Ms. Bloom and her firm justified the issuance of this press release and its timing claiming that Mr. Nguyen's counsel responded quote no comment to this demand letter that they sent. They repeated that representation in a declaration to the district court. They repeated that rep that representation to this court in their uh appellate brief and this supposes silence by Mr. Nguyen's counsel according to Ms. Bloom was so unique as to somehow give her great confidence in the accuracy of what she was alleging. What about Mr. Ndaga's point that Ms. Mullins reviewed the press release prior to issuance and confirmed the accuracy of the press release? Yes so Ms. Mullins reviewed Ms. Mullins reviewed the accuracy of the press release and confirmed it but that does not excuse Ms. uh Ms. Bloom or allow Ms. Bloom to ignore all the other facts of which she was aware and there were lots of other facts of which she was aware that cast substantial doubt on this including as Ms. Mullins said because we asked Ms. Mullins in her deposition in the court as you recall we asked her specifically why were there things omitted in that declaration or that press release why were things omitted and her response was well I'm not a professional I don't draft these things I left it to the lawyers to draft them in light of how they viewed it should be presented so again it's not like Ms. Mullins is saying I made these strategic decisions about how this is worded what it was characterized as she relied upon her lawyers and they are the ones who made I can't remember if this is her exact terminology made the editorial decision about what was included or not and so if you look again at the evidence as a whole the entire picture Ms. Bloom's statement that somehow Mr. Wynn's counsel confirmed this by saying they would have no comment was disproven in discovery that is fact communicated with her client Ms. Mullins and informed her client Ms. Mullins that Mr. Wynn's counsel had in fact said they needed an additional week's time in order to get back to her and as judge as the district judge noted the press release this wasn't a lawsuit let's recall that they'd already issued a demand letter and I'll talk about that in just a moment but this press pressure on Mr. Wynn to try and get him to give them money that was its sole purpose and in fact they used the word pressure in their own notes in describing what its purpose was just like in their own internal notes they described speculating how can we get this guy to come to the table and pay us money and and consider the substance again of the demand letter itself the demand of action tortuous tortuous breach of the contract Mr. Wynn had no contract with Ms. Mullins Mr. Wynn wasn't even at the company when this demand was made this demand letter had not even been sent to the company all this was and I think that the reasonable inference from the evidence is all this was was an attempted shakedown make allegations publish as salacious of a of a press release as she thought she could get away with and by the way she thought she could get away with anything because as she later told the district court and when she filed her answer and actually I should say she filed her answer before this motion was resolved Ms. Bloom claimed that Mr. Wynn is a libel-proof plaintiff in other words she can say anything about him no matter how false no matter how defamatory and he has no recourse and that's what this is really about she believed that Mr. Wynn was sufficiently wounded by all of the other news articles out there that she could get a free shot at him and that there would be no consequences to that free shot Miss and Miss Bloom's own in the record also Miss Bloom's own engagement letter confirms that that was the plan and that that was what was going on she has an engagement letter where she's only in her only representation of this client is for purposes of trying to negotiate a settlement for which then she receives 40 of any settlement that is received she had no obligation to represent her in litigation because after all there were no actual claims that were asserted against Mr. Wynn or even threatened against Mr. Wynn their own demand letter was simply a claim directed at the company with whom Mr. Wynn was no longer affiliated and as the trial court noted when it looked through the evidence here Miss Bloom originally tried to support her contention that she did not harbor doubts about this this press release by claiming that she had also interviewed a Lauren Molina she put that in a declaration as the district court noted that was later proven to also be untrue that in fact they did not interview this Miss Molina until after the press release had reissued and the discovery from that demonstrated that Miss Molina had in fact objected to many of the assertions and that they had tried to get her to subscribe to in a declaration additionally as the district court noted if the court looks at what the witnesses actually all testify to they all contradict the representations that are made in that press release I thought that the most noticeable of which this is also cited by the district court judge is that Mr. Chan Thames or Con Thames I apologize explained where the hostility was between Miss Mullins and the choreographer it had nothing to do with Mr. Wynn it had nothing to do with being scantily clad as he explained it and that they clashed and that they clashed from the inception of her role there all of that was of course conveniently omitted from the press release because it was inconsistent with the narrative that Ms. Bloom wanted to advance as part of her effort to get Mr. Leverage on Mr. Wynn to get her to pay her money of which she would have received 40 percent of then I would say but last but not least and Judge Bennett this is a point I would like comment on a question you pose and that is the revised press release now my friend Mr. Randazza says that this was an accommodation to Mr. Wynn no it wasn't an accommodation to Mr. Wynn this was Ms. Bloom's recognition of consciousness of guilt when she was informed that Mr. Wynn was likely going to sue her and her client so she rushed out a revised press release changing all of the generic people at the company counsel uh you're opposing counsel said during argument described this as a subsequent remedial measure um was was introduction of this objected to under some Nevada evidence code barring uh subsequent remedial measures to prove consciousness of wrongdoing no it was not and in fact I believe they offered the corrected press release as part of their own motion is my recollection so here's what the evidence showed the district court and why the district court said there's a triable issue here against Ms. Bloom and what Ms. Bloom was doing and that is the witnesses contradicted her as Bloom was engaged in in I'll use the word scheme to an attempt to get money out of Mr. Wynn by asserting claims that in fact there were no claims the press release was all about putting pressure on him this wasn't this wasn't a lawsuit where she could claim the benefits of the litigation privilege this was a press release that was designed to ratchet up pressure to see if he would weaken up his wallet and that's where this lawsuit then stems from she rushed then out this amended press release but she admits is a corrected press release which in fact changed many of the and I believe as part of the record it is uh supplemental appendix 172 where we gave a red line of all the changes that she made to it to get this out and of course it was it was out I the lawsuit was filed is my recollection from the record she made all of these changes now eliminating again all the references to how Mr. Wynn did this Mr. Wynn demanded that Mr. Wynn required this and by the way when those witnesses were deposed about this they all conceded they had no knowledge of Mr. Wynn doing any of those things and in fact Mr. uh Mr. Con that they had actually happened again when the evidence is viewed in the light most favorable to Mr. Wynn which is what the law requires the district court is correct in concluding that there is a triable issue of fact here for the jury to decide contrary to Miss Bloom's bet Mr. Wynn is not a libel-proof plaintiff there in fact I believe every court that I am aware of has rejected the ever exists anymore in the law because it allows people to slander people that are in difficult situations which is what she was willing to bet she could do she was willing to bet that Mr. Wynn had been so wounded by these other allegations that he would not have the the veracity and he would not come after her for issuing this false press release she miscalculated and under the law there is a triable issue of fact here for the jury to decide that fact I thank the court for its time unless it has questions for me and I apologize again for the technology not a problem like this Judge Clifton said we're all struggling with that thank you Mr. Vice your honors thank you uh I I my friend Mr. Vice I think is a little bit unfamiliar with the record since he was not there below but if we look at the the record actually at ER 0061 to 62 135 to 136 Ms. Molina actually I'm sorry she Ms. Mullins actually stated that she had given up on any kind of money at the time so this this fanciful story I think is far further from the truth that it was some kind of a shakedown that's far further from the truth than this press release was now additionally if we look at what he said was contradictory that the the way that the press release was written that was the first version of it and the deponent actually testified as my client originally put in a sentence that Mr. Wynn asked to do this we could look at the dancer's vaginas that was one of the statements she said that was a bit extreme she was part of the editing process our client is under no obligation to call our client to call her client a liar at that time the uncontroverted testimony of the appellants Ms. Mullins and Colt Pratty shows the press releases were published so that Mullins could tell her story in the Me Too era the fact that Mr. Kahn Tammins had some contradictions a number of about two years after the original statement even he testified during his deposition that yes the original version was probably closer to the truth as his memory had faded so the standard for a public figure to survive summary judgment in this case is very high and there's a reason for that in order to demonstrate reckless disregard of the truth Gertz versus Welch requires that the speaker entertain serious doubts as to the truth of their statements 418 U.S. 323 334 at note 6 it is not whether a reasonably prudent man or a woman in this case would have published or would have investigated before publishing but whether the defendant entertains serious doubts that's also Saint Amant versus Thompson we do not have any serious doubt in fact we have no doubt and if the facts that are in the release may turn out to be proven false in a sexual harassment claim that's different than my client harboring serious doubts at the time of publication thank you your honors if you have any questions it doesn't appear that we do thank you very much thank you for your time and thank you Todd nice to see you all right the matter is submitted for decision
judges: Clifton, Nguyen, Bennett